IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SELECTIVE WAY INSURANCE )
COMPANY, )
    Plaintiff, )
     )
        v. )    Civil Action No. 3:25CV222 (RCY)
     )
HOME DEPOT PRODUCT AUTHORITY, )
LLC, )
    Defendant. )
     )

## MEMORANDUM OPINION

This is a products liability action brought by Plaintiff Selective Way Insurance Company ("Selective") subrogee of Southpark Skin & Laser, LLC ("Southpark"), wherein Selective alleges that a defective water line allegedly sold by Defendant Home Depot Product Authority, LLC ("Home Depot") burst and flooded Southpark's property. The case is before the Court on Home Depot's Motion to Dismiss. The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will deny the motion.

### I. BACKGROUND[1]

**A. Factual Allegations**

Selective is the insurer and subrogee of Southpark, a cosmetic medical office. Am. Compl. ¶ 6, ECF No. 10. In January 2018, Southpark purchased a "Keurig B150 or K150 Direct Water

---

[1] When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require accepting any unreasonable inferences or a plaintiff's legal conclusions. *Id.* Additionally, a court may consider any documents attached to the complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). At the motion to dismiss stage, a court may consider the face of the complaint, documents attached to the complaint, documents attached to the motion to dismiss that are integral to the

Line Plumb Kit" on Amazon from a third-party distributor. *Id.* ¶ 12; *see* Am. Compl. Ex. 1, ECF No. 10-1. The kit included the product at issue in this case: a one-quarter-inch polyethylene tube. Am. Compl. ¶ 13. Southpark contracted with a third party to install the tubing as a water supply line for a Keurig coffeemaker in its office. *Id.* ¶¶ 9–10, 18.

On or about February 28, 2022, the water line burst and flooded Southpark's office. *Id.* ¶¶ 21, 23. The flooding caused over $225,000 in damage to the office. *Id.* ¶ 30; *see* Am. Compl. Ex. 2, ECF No. 10-2. Selective alleges that the leak was caused by "a defective design of the material of the water supply line which allowed for premature degradation when used as intended." Am. Compl. ¶ 25. Specifically, Selective alleges that the water line was defective because it had a "propensity for degradation." *Id.* ¶ 36.

Notably, Southpark did not purchase the water line directly from Home Depot; nevertheless, Selective alleges that Home Depot "inspected, marketed, distributed, supplied, sold and/or placed [it] into the stream of commerce." *Id.* ¶ 33. This belief is at least partly based on the fact that the water line bears the number "701873" on its exterior, and a Google search for that number reveals that this number corresponds to the Everbilt brand, which is owned by Home Depot. *See id.* ¶¶ 13–16. Selective further alleges that at the time of the leak, the water line was in the same condition as it was when it left Home Depot's control. *Id.* ¶ 34.

**B. Relevant Procedural History**

Selective first filed this matter in the Circuit Court for Colonial Heights on December 10, 2024. Not. Removal, ECF No. 1. Home Depot removed the matter to this Court on March 21, 2025. *Id.* Selective filed its Amended Complaint on April 1, 2025. Am. Compl., ECF No. 10. On April 15, 2025, Home Depot filed the instant Motion to Dismiss. Mot. Dismiss, ECF No. 13;

---

complaint and authentic, and matters of public record subject to judicial notice. *Philips*, 572 F.3d at 180. Applying these standards, the Court construes the facts in the Amended Complaint, including any attached documents, as follows.

Mem. Supp. Mot. Dismiss ("Mem. Supp."), ECF No. 15. On April 29, 2025, Selective filed its Response. Mem. Opp'n Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 16.. On May 5, 2025, Home Depot filed its Reply. Reply Supp. Mot. Dismiss ("Reply"), ECF No. 17.

## II. LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Lab'ys., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted); *see also Martin*, 980 F.2d at 952.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic

recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

### III. ANALYSIS

Selective's Amended Complaint contains two counts against Home Depot: one count of negligence (Count I), Am. Compl. ¶¶ 32–40, ECF No. 10, and one count of breach of the implied warranty of merchantability (Count II), *id.* ¶¶ 41–48. In the instant Motion, Home Depot argues that Selective fails to state a claim in both counts. In support, Selective first argues that Southpark's claim—under either theory of recovery—is foreclosed by a statement on Home Depot's webpage, which indicates that the water line was not designed for use in conjunction with drinking water, and specifically not designed for use with a coffeemaker. Second, it argues that Selective has failed to sufficiently allege that Home Depot sold the water line, a necessary element in any products liability action. Finally, it argues that Selective's breach of implied warranty theory is time-barred.

In response, Selective argues that its theories are not foreclosed as Home Depot suggests and that it otherwise adequately stated a claim in both of its counts.

The Court agrees with Selective. First, the Court finds that it cannot consider the webpage submitted by Home Depot at this stage; therefore, Home Depot's arguments premised upon the webpage are unavailing. Second, the Court finds that Amended Complaint states a claim for product liability under both a negligence and breach of implied warranty theory because (1) Selective has sufficiently alleged that Home Depot sold the defective water line and (2) Selective's breach of implied warranty theory is not time-barred.

A. **Home Depot Cannot Rely on the Webpage in Support of its Motion**

At the outset, the Court clarifies that it may not consider Home Depot's arguments that rely on the Home Depot website, as the content of the website is not integral to the Amended Complaint.

In support of its Motion to Dismiss, Home Depot has submitted a screenshot taken from its website—purportedly the product page for the tubing at issue here. Mem. Supp. Ex. A, ECF No. 15-1. Home Depot asserts that performing a Google search for the number "701873," as described in the Amended Complaint, provides this webpage as a result. *See* Mem. Supp. 3–4, ECF No. 15. As relevant here, the webpage states that the tubing is "[n]ot [to] be used in drinking water line [sic], such as ice maker, coffee maker, refrigerator, etc." Mem. Supp. Ex. A (unnecessary capitalization omitted). The webpage also states that "[p]olyethylene tubing is odorless, tasteless, flexible, lightweight and easy to handle and cut. The milky-white color allows fluid levels to be visually monitored. Polyethylene naturally resists cracking which makes it pneumatic control line [sic]." *Id.* It further states that the tubing is "[r]esistant to many alkalis, acids, solvents, [and] fuels." *Id.*

Home Depot argues that the website, combined with the fact that Southpark used the water line for drinking water and with a coffeemaker, establishes that Southpark misused the water line. Mem. Supp. 8–9. Home Depot contends that the website is integral to the Amended Complaint, and that therefore the Court may consider it at this stage. *Id.* at 3–4.

Selective responds that the substance of the webpage is not properly considered in the universe of the instant Rule 12(b)(6) Motion, since it is not integral to the Amended Complaint. Pl.'s Opp'n 5–6. Selective further argues that even if Southpark misused the water line, the misuse was foreseeable and thus does not defeat Selective's claim. *Id.* at 8. The Court agrees that the webpage is not properly before the Court at this juncture and therefore declines to consider it.

When deciding a motion to dismiss under Rule 12(b)(6), courts may not consider "matters outside the pleadings" without converting the motion to one for summary judgment. Fed. R. Civ. P. 12(d). However, the Fourth Circuit has carved out an exception Rule 12(d), under which courts may consider a document attached to a motion to dismiss that "was not attached to or expressly incorporated into the complaint" if: (1) "the document was integral to the complaint"; and (2) "there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Sec'y of State for Defense v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). If a document does not meet this standard, a court may not consider it without converting the motion to dismiss for one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Doriety v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024). A document is integral to a complaint when the plaintiff's claims are based on the document. *Goines*, 822 F.3d at 166; *see also Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *Mills v. Inova Health Care Servs.*, 2025 WL 40550, at *1 (4th Cir. Jan. 7, 2025).

Home Depot contends that the Court may consider the content of the webpage because Selective's claims are "based on" the webpage. Because the Google search described in the Amended Complaint would return, *inter alia*, a result for Home Depot's webpage, Home Depot argues that Selective's claims necessarily "rely upon the existence of" the webpage. Mem. Supp. 4, ECF No. 15. In other words, without the webpage, there is "no factual or inferential basis to suggest that Home Depot had any involvement in the design, manufacture, sale, or distribution of the Subject Water Line." Reply 4, ECF No. 17 (emphasis omitted). In actuality, however, the Amended Complaint refers only to the results of a Google search generally; it does not refer to the particular webpage that Home Depot has submitted. *See generally* Am. Compl. This is fatal to Defendant's argument.

The Court is unconvinced by Home Depot's argument because it asks the Court to discard the basic requirements of a Rule 12(b)(6) analysis. In analyzing Home Depot's Motion to Dismiss, the Court must accept as true Selective's allegation that Home Depot sold the water line. At this stage, Selective's well-pleaded allegations are assumed to be true, and the Amended Complaint is viewed in the light most favorable to Selective. *See Mylan Lab'ys., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted). The only allegations that are not entitled to the presumption of truth are legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Google search notwithstanding, Selective plainly alleges that "[t]he Subject Water Line was inspected, marketed, distributed, supplied, sold, and/or placed into the stream of commerce by" Home Depot. Am. Compl. ¶ 33; *see id.* ¶ 42 (similar language). By arguing that Selective's allegations necessarily rely on Home Depot's webpage, Home Depot suggests that, absent reference to the webpage, the remainder of Selective's allegations that Home Depot sold the water line are legal conclusions not entitled to the presumption of truth. *See Iqbal*, 556 U.S. 662, 678 (2009). Not so. Selective's allegation is not a "mere conclusory statement" or "unadorned, the-defendant-unlawfully-harmed-me-accusation," *id.*, nor is it a legal conclusion of Home Depot's wrongdoing. Rather, it is merely an assertion of fact: Home Depot sold the water line. That this happens to be an element of Selective's legal theory does not alone transform it from a factual allegation to a legal conclusion. Nor does it mean that the allegation is not well-pleaded, despite Home Depot's suggestion that Selective must allege where, when, or how Home Depot sold the water line. *See* Mem. Supp. 7–8. Such details are not required to make the allegation that Home Depot sold the water line well-pleaded. Given this landscape, Selective's allegation that Home Depot sold the water line is entitled to the presumption of truth.

Thus, Selective's allegation that Home Depot sold the water line is presumed true, even absent allegations of the Google search. Because the sold-by allegation can stand alone, without

reference to the search, Selective's claim cannot be said to be "based on" the Home Depot webpage, such that its contents could be relied upon in support of a Rule 12(b)(6) Motion to Dismiss.

This is further supported by the fact that the Amended Complaint does not suggest explicit reliance by Plaintiff on the webpage. While *Goines*—the Fourth Circuit case delineating the "integral to" rule as an exception to Rule 12(d)—does not name explicit reliance as a necessary element, some other Fourth Circuit cases appear to have considered this as an additional requirement along with the document being integral to the complaint and authentic. *See, e.g.*, *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) ("[A]lthough the stockholders failed to attach that article to their complaint (LCI attached it to its motion to dismiss), a court may consider it in determining whether to dismiss the complaint because it was integral to and explicitly relied on in the complaint and because the plaintiffs do not challenge its authenticity."). A review of case law similarly suggests that the Home Depot webpage is not the sort of extrinsic evidence properly falling within the exception to Rule 12(d). *See, e.g.*, *Am. Chiropractic*, 367 F.3d at 234 (holding that defendant's provider agreement containing its alleged misrepresentations was integral in civil RICO action); *Blankenship v. Manchin*, 471 F.3d 523, 526, 526 n.1 (4th Cir. 2006) (newspaper article reporting defendant's remarks in a § 1983 retaliation action); *Leask v. Robertson*, 589 F. Supp. 3d 506, 518 (D.S.C. 2022) (defendant's blog posts containing the alleged defamatory statements in a defamation action). In each of these cases, the document at issue was far more obviously central to the plaintiff's claim than the webpage is here.

The Court also finds that it would be unfair to Selective to consider the substance of the Home Depot webpage at this juncture. As the Fourth Circuit has stated, "[t]he rationale underlying this exception [to Rule 12(d)] is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated '[w]here plaintiff has actual notice

8

*. . . and has relied upon* these documents in framing the complaint.'" *Am. Chiropractic*, 367 F.3d at 234 (emphasis added) (omission and third alteration in original) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).[2] Here, there is nothing alleged in the Amended Complaint on which the Court could find that Selective had notice of the actual content of the webpage upon which Home Depot relies.[3] Given this, the Court declines to consider the webpage at the current procedural juncture.

Because Selective adequately alleges that Home Depot sold the water line without reference to the Google Search, its claims are not "based on" the Home Depot webpage that Home Depot has submitted. In turn, then, the webpage is not "integral" to the Amended Complaint, so the Court may not consider it at this stage without converting the Motion to Dismiss into one for summary judgment.[4] *See* Fed. R. Civ. P. 12(d).

## B. Selective States a Claim Against Home Depot

Having determined the factual universe relevant to the instant Motion, the Court turns to the merits of Home Depot's arguments. Because the Court will not consider the webpage, it will not address Home Depot's arguments regarding misuse. The remainder of Home Depot's arguments are similarly unavailing.

---

[2] As the Fourth Circuit goes on to note:

> What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent.

*Am. Chiropractic*, 367 F.3d at 234 (quoting *In re Burlington Coat Factory*, 114 F.3d at 1626). This sort of concern is not implicated here.

[3] The warning that Home Depot relies on is buried in a bulleted list in the "Product Details" section of the webpage. *See* Mem. Supp. Ex. A, ECF No. 15-1.

[4] The Court declines to convert the motion to one for summary judgment and instead excludes the webpage. *See* 5C Arthur R. Miller & A. Benjamin Spencer, *Federal Practice and Procedure* § 1366 (3d ed. 2025 update) ("[Under Rule 12(d)], federal courts have complete discretion to determine whether to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.").

The Amended Complaint asserts claims under a negligence theory of products liability (Count I) and a breach of implied warranty theory of products liability (Count II). Home Depot contends that both counts fail. Specifically, it argues that Selective insufficiently alleges that Home Depot sold the water line and that Selective insufficiently alleges that the water line was defective. *See* Mem. Supp. 7–8. Selective responds that it has sufficiently alleged these elements. *See* Pl.'s Opp'n 6–8. The Court agrees with Selective and finds that the Amended Complaint states a claim in both Counts I and II.

In Virginia,[5] "plaintiffs may pursue a products liability remedy 'under a theory of implied warranty of merchantability or under a theory of negligence.'" *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 280 (4th Cir. 2021) (quoting *Evans v. Nacco Materials Handling Grp., Inc.*, 810 S.E.2d 462, 469 (Va. 2018)). Both theories rise and fall on the same elements: no matter the theory, "a plaintiff must prove '(1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands.'" *Id.* (quoting *Evans*, 810 S.E.2d at 469). A plaintiff must also show, of course, that "the defect . . . 'actually caused [its] injury.'" *Benedict v. Hankook Tire Co.*, 295 F. Supp. 3d 632, 637 (E.D. Va. 2018) (quoting *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 420 (4th Cir. 1993)).

Because the elements are the same under either a theory of negligence or of breach of implied warranty, and because Selective asserts its claim against Home Depot under both theories, the Court considers the theories together. *See, e.g.*, *id.* ("The basic analytical framework applicable to products liability claims in Virginia is the same whether a plaintiff is bringing a negligence or breach of implied warranty action."); *Knapp v. Zoetis Inc.*, 2022 WL 989015, at *4

---

[5] "In a diversity case, state substantive law governs . . . the 'substantive elements.'" *In re Lipitor*, 892 F.3d 624, 646 (4th Cir. 2018).

n.7 (E.D. Va. Mar. 31, 2022) ("Because Knapp's claims for Negligence and Breach of Implied Warranty rise and fall together, the Court addresses them jointly.").

Home Depot does not challenge Selective's pleading of the causation element, and the Amended Complaint clearly alleges that the fracture in the water line, alleged to have resulted from a defective design, caused the flooding at Southpark's office. *See* Am. Compl. ¶¶ 21, 23, 25–27. So, the question is whether Selective has sufficiently alleged: (1) that the water line was unreasonably dangerous; and (2) that the unreasonably dangerous condition existed when the water line left Home Depot's hands.

1. Unreasonably Dangerous

Home Depot challenges Selective's pleading of this element by asserting a proposition from the Virginia Supreme Court case *Logan v. Montgomery Ward & Co.*, 219 S.E.2d 685 (Va. 1975), that "a defect cannot simply be inferred from an accident, particularly where the plaintiff fails to exclude other possible causes." *See* Mem. Supp. 6–7. This argument mistakenly asks the Court to apply the reasoning of summary judgment—the procedural posture underlying the decision in *Logan*—at the 12(b)(6) stage. Setting *Logan* aside, the Court finds that Selective has sufficiently alleged that the water line was unreasonably dangerous because the alleged propensity for degradation would be inconsistent with a reasonable consumer's expectations for a fluid line.

"A product is 'unreasonably dangerous' if it is defectively manufactured, defectively designed, or 'unaccompanied by adequate warnings concerning its hazardous properties.'" *Sardis*, 10 F.4th at 280 (quoting *Evans*, 810 S.E.2d at 469). Here, Selective alleges a design defect, specifically that the water line had a propensity for degradation. *See* Am. Compl. ¶¶ 25–27, 36. "To prevail on a design defect claim, a plaintiff must show that the manufacturer 'owes a legally recognized duty to design' a product in a certain way to ensure that the product 'is reasonably safe for the purpose for which it is intended.'" *Sardis*, 10 F.4th at 280 (quoting *Holiday Motor Corp.*

11

*v. Walters*, 790 S.E.2d 447, 454–55 (Va. 2016)). Such a duty can be shown by reference to governmental safety standards, industry practices, or reasonable consumer expectations. *Id.* (citing *Evans*, 810 S.E.2d at 469–70). "If a plaintiff successfully establishes a duty to construct a product in a particular manner, the manufacturer breaches that duty if the product does not conform to that standard." *Id.* (citing *Holiday Motor*, 790 S.E.2d at 455, 455 n.14). So, to adequately plead this element, Selective must allege that the design of the water line was such that it failed to conform to governmental safety standards, industry practices, or reasonable consumer expectations.

Here, Selective alleges that the water line was defectively designed because it had a propensity for degradation. *See* Am. Compl. ¶¶ 25–27, 36. Clearly, a reasonable consumer would expect a fluid line to be designed such that it does not have a propensity for degradation. *Cf. James v. Subaru Corp.*, 2022 WL 625091, at *3 (W.D. Va. Mar. 3, 2022) (holding that the plaintiff had sufficiently alleged that an airbag was unreasonably dangerous due to a design defect because it "should not deploy after a minor collision and with such force that it fractures the driver's spine"). Accordingly, Selective has sufficiently alleged that the water line was unreasonably dangerous.

    2. <u>Condition Existed When the Product Left the Defendant's Hands</u>

The second disputed elements is "that the unreasonably dangerous condition existed when the goods left the defendant's hands." *Sardis*, 10 F.4th at 280 (quoting *Evans*, 810 S.E.2d at 469). The Court finds that the plain allegations of the Amended Complaint are sufficient as to this element.

Home Depot spends significant ink contending that, as a factual matter, it did not participate in the production of the water line. *See* Mem. Supp. 7–8. Yet, as the Court has reiterated aplenty, at this procedural posture, Selective's allegation that Home Depot participated in the production of the water line is presumed true. *Philips*, 572 F.3d at 180.

Thus, because Selective alleges that Home Depot sold the water line, *see* Am. Compl. ¶¶ 33, 42, and because Selective alleges that the water line was defectively designed at its inception, *see id.* ¶¶ 25–27, 36, it necessarily alleges that the defective condition existed when it left Home Depot's hands. Accordingly, Selective adequately alleges the second contested element of its products liability claim.

As a result of the foregoing, the Court finds that the Amended Complaint states a claim for products liability as to both Count I and Count II.

## C. Count II (Breach of Implied Warranty) is Not Time-Barred

The Court finally considers Home Depot's contention that Selective is time-barred from asserting its breach of implied warranty theory (Count II).[6] Selective fails to address this issue in its Response in Opposition. Nevertheless, the Court must assess the merits of even an unopposed argument for dismissal. *See Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 416 n.3 (4th Cir. 2014) (emphasizing district courts' independent "obligation to review [unopposed] motions to ensure that dismissal is proper"); *see also Wright v. Collins*, 766 F.2d 841, 847 n.3 (4th Cir. 1985) ("[T]he norm should be to decide claims on their merits, and the mere inaction of a party or his lawyer should not result in the loss of a hypothetically meritorious claim, except in those limited instances . . . where clear notice is given in advance that a certain procedural default will or might result in loss of a claim or defense." (quoting *Lorin Corp. v. Goto & Co., Ltd.*, 700 F.2d 1202, 1205–06 (8th Cir. 1983))). Having done so, the Court finds that, because the applicable statute did not begin to run until the damage to Southpark's property actually occurred, the statute of limitations has not run on Count II.

---

[6] As discussed *infra* Part III.B, the elements of a products liability claim are the same under either a theory of negligence or one of breach of implied warranty, and Selective seeks the same relief under both theories. The present issue is thus somewhat academic; the dismissal of only one of Selective's theories would have little practical significance on the case.

13

To restate, Selective seeks to recover for damages to Southpark's office. Under Virginia law, the statute of limitations in a products liability action for injury to property other than the product itself is five years. *See* Va. Code Ann. § 8.01-246(C) ("[I]n products liability actions . . . for injury to property, other than the property subject to contract, the limitation prescribed in § 8.01-243 shall apply."); *id.* § 8.01-243(B) ("Every action for injury to property . . . shall be brought within five years after the cause of action accrues.").

Generally, the statute of limitations in an action for injury to property begins to run "when the first measurable damage occurs." *Robinson v. Nordquist*, 830 S.E.2d 36, 42 (Va. 2019) (quoting *Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 795 S.E.2d 875, 881 (Va. 2017)); *see also* § 8.01-230 ("[T]he right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person or damage to property . . . ."). Additionally, however, "[i]n every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person or damage to property"; but, "in actions *ex contractu*," it shall be deemed to accrue "when the breach of contract occurs . . . and not when the resulting damage is discovered." Va. Code Ann. § 8.01-230. Count II seeks recovery for damage to property, but the legal theory is breach of warranty, which is, of course, a contracts theory. Thus, to determine when the statute of limitations began to run on Count II, the Court must determine whether Count II is an action for "damage to property" or an "action[] *ex contractu*"—essentially, whether Count II is a pure contracts claim, or one more akin to a tort claim. § 8.01-230.

Home Depot argues that, for the breach of warranty claim, the Court should apply the Virginia Uniform Commercial Code ("Virginia UCC"), under which the five-year limitation period begins to run when "tender of delivery is made," with an exception for certain warranties

14

not apparently relevant here. Va. Code Ann. § 8.2-725(2). Thus, Home Depot contends that Count II is time-barred because the water line was delivered in January 2018, *see* Am. Compl. ¶¶ 11–12; Am. Compl. Ex. 1, ECF No. 10-1, and this action was not commenced until December 2024—i.e., more than five years thereafter, *see* Not. Removal ¶ 2, ECF No. 1.

Home Depot's argument, however, runs contrary to the Supreme Court of Virginia's ruling in *W.J. Rapp v. Whitlock Equipment Co.*, where the court held that the Virginia UCC statute of limitations does not apply to products liability claims against manufacturers who were "not a party to [the] contract of sale," since the statute of limitations only applies to actions "for a breach of 'contract of sale' between the 'parties' described in the Uniform Commercial Code." 279 S.E.2d 133, 137 (Va. 1981). On its way to this conclusion, the court reasoned that applying the Virginia UCC "to [a] consumer's products liability action against a remote manufacturer" could cause "the statute [to] run before all elements of [the] plaintiff's claim were present." *Id.* at 138 (quoting *Southgate Cmty. Sch. Dist. v. West Side Constr. Co.*, 247 N.W.2d 884, 887 (Mich. 1976)). Here, there was no contractual relationship between Southpark and Home Depot; thus, under *W.J. Rapp*, the Virginia UCC statute of limitations is inapplicable.

Turning to the tort-or-contract question, the Court finds that, even though Count II is styled as "breach of warranty," it should not be treated as a contracts claim for statute of limitations purposes. "The primary consideration underlying tort law is the protection of persons and property from injury, while the major consideration underlying contract law is the protection of bargained for expectations." *Filak v. George*, 594 S.E.2d 610, 618 (Va. 2004) (citing *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 374 S.E.2d 55, 58 (Va. 1988)). Here, the injury is to Southpark's property, not to its bargained-for expectations. The harm alleged is not to the water line itself, but to *other* property. This brings Count II within the ambit of tort law.

This conclusion is buttressed by the structure of Virginia Code Ann. § 8.01-246(C). The subsection provides that products liability actions for personal injuries or harm to other property are subject to the limitations period generally applicable to torts actions. *See* Va. Code Ann. § 8.01-246(C) ("[I]n products liability actions for injury to person and for injury to property, other than the property subject to contract, the limitation prescribed in § 8.01-243 shall apply."); *id.* § 8.01-243(B) ("Every action for injury to property . . . shall be brought within five years after the cause of action accrues."). As Justice Poff observed in *Cauthorn v. British Leyland, U.K., Ltd.*, 355 S.E.2d 306 (Va. 1987):

> As a general rule, actions founded upon a contract are subject to statutory time limitations different from those imposed upon actions sounding in tort. Compare Code § 8.01–243, which applies to tort actions generally, and Code § 8.01–246, which applies to "actions founded upon a contract". The general rule does not apply, however, "in products liability actions for injury to person and for injury to property, other than the property subject to contract". Code § 8.01–246. Thus, the General Assembly has determined that, for purposes of the statute of limitations, a breach of warranty claim in a products liability action sounds in tort; said differently, an action based upon a breach of warranty claim sounds in contract only when the damage claimed by the purchaser is the loss of his bargain with the seller.

*Cauthorn*, 355 S.E.2d at 310 (Poff, J., concurring).

Finally, reason, fairness, and the policy underlying statutes of limitations all suggest that Count II should not be time-barred. Statutes of limitations "are designed to compel the prompt assertion of an accrued right of action[,] not to bar such a right before it has accrued." *Caudill*, 168 S.E.2d at 259. If a plaintiff's cause of action for products liability accrued upon tender of delivery, "the statute could run before all elements of plaintiff's claim were present." *W.J. Rapp*, 279 S.E.2d at 138 (quoting *Southgate Cmty. Sch. Dist.*, 247 N.W.2d at 887). Such would be the case here: holding that the statute began to run upon delivery would mean that Count II was time-barred before it could ever have been brought. The Court cannot conclude that Virginia law compels such an irrational result.

Therefore, the Court finds that the five-year limitation applicable to Count II began to run "from the date the injury [was] sustained," § 8.01-230, more specifically, the date "when the first measurable damage occur[ed]," *Robinson*, 830 S.E.2d at 42.[7]  The flooding at Southpark's office occurred on or about February 28, 2022, and this action was commenced in the Colonial Heights Circuit Court on or about December 10, 2024.  Accordingly, the Court holds that Count II is not time-barred.

### IV. CONCLUSION

For the reasons detailed above, Home Depot's Motion to Dismiss will be denied in full.

An appropriate Order shall issue.

/s/ *Roderick C. Young*
United States District Judge

Date: January 27, 2026
Richmond, Virginia

---

[7] Home Depot asks the Court to follow *Burke-Parsons-Bowlby Corp. v. E.D. Etnyre & Co.*, 585 F. Supp. 620 (W.D. Va. 1984), in which the Western District of Virginia, ostensibly applying Virginia law, held that the statute of limitations for a breach of warranty claim for property damage accrued at the time of sale, not the time of the damage. Mem. Supp. 9–10.  That conclusion, however, is contrary to the rule stated in *Cauthorn*, which is a published opinion from the Virginia Supreme Court and therefore controlling.  *See Cauthorn*, 355 S.E.2d at 310.